Citation Nr: 1730432 
Decision Date: 07/31/17 Archive Date: 08/04/17

DOCKET NO. 12-32 696 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
in Atlanta, Georgia


THE ISSUES

1. Entitlement to an increased rating in excess of 40 percent for service-connected chronic venous insufficiency of the left lower extremity.

2. Entitlement to service connection for lymphedema of the right lower extremity, to include as secondary to service-connected chronic venous insufficiency of the left lower extremity.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

C. D. Simpson, Counsel


INTRODUCTION

The Veteran served on active duty from October 1952 to March 1974.

This appeal to the Board of Veterans' Appeals (Board) arose from a December 2010 rating decision in which the Tiger Team, a VA Special Processing Unit, at the RO in Cleveland, Ohio found that new and material evidence had not been received to reopen a claim for service connection for a right leg disability, characterized as swelling in the right lower extremity consistent with lymphedema and postphlebitic syndrome and denied a rating in excess of 40 percent for chronic venous insufficiency of the left lower extremity. (Jurisdiction of the appeal remained with the RO in Atlanta, Georgia.) In September 2011, the appellant filed a notice of disagreement (NOD). In September 2012, a statement of the case (SOC) was issued and the appellant filed a substantive appeal (via a VA Form 9, Appeal to the Board of Veterans' Appeals) in November 2012. 

On his VA Form 9, the Veteran requested a Board hearing, via videoconferencing. The Veteran was scheduled for a videoconference hearing to be held at the Atlanta RO on April 27, 2016. The Veteran did not attend the scheduled hearing and the Veterans Appeals Control and Locator System (VACOLS) indicates that the Veteran cancelled his hearing. The Veteran has also not requested that his hearing be rescheduled and in the June 2016 appellant's brief, the Veteran's representative made no mention of a Board hearing. Under these circumstances, the Board determined that the Veteran's prior request for a Board hearing has been withdrawn.

In May 2016, this appeal was advanced on the Board's docket, pursuant to 38 U.S.C.A. § 7107 (a)(2) (West 2014) and 38 C.F.R. § 20.900 (c) (2016). 

In July 2016, the Board found that because evidence received since a December 2003 denial of the Veteran's claim for service connection for a right leg disability included new and material evidence received prior to the expiration of the appeal period, the criteria for reconsideration of the claim for service connection for a right leg disability, pursuant to 38 C.F.R. § 3.156(b), was warranted. The Board then remanded for additional development the claim for service connection for a right leg disability (characterized as lymphedema of the right lower extremity, to include as secondary to service-connected chronic venous insufficiency of the left lower extremity), and the claim for an increased rating for his service-connected chronic venous insufficiency of the left lower extremity. 

After accomplishing further action, the agency of original jurisdiction (AOJ) continued to deny the claims for service connection for lymphedema of the right lower extremity and for an increased rating for his service-connected chronic venous insufficiency of the left lower extremity(as reflected in an August 2016 supplemental SOC (SSOC)), and returned these matters to the Board.

In December 2016, the Board again remanded the above claims for additional development. After accomplishing further action, the AOJ again continued to deny the claims (as reflected in a May 2017 SSOC), and returned these matters to the Board.

The Board's decision on the claim for higher rating for chronic venous insufficiency of the left lower extremity is set forth below. The claim for service connection for right lower extremity lymphedema is addressed in the remand following the order; this matter is, again, being remanded to the AOJ VA will notify the Veteran when further action, on his part, is required.


FINDINGS OF FACT

1. All notification and development actions needed to fairly adjudicate the claim herein decided.

2. Pertinent to the current June 2010 claim for increase but prior to November 19, 2015, medical evidence did not establish either stasis pigmentation or persistent ulceration as a manifestation of chronic venous insufficiency of the left lower extremity.

3. As of November 19, 2015, the evidence has, as likely as not, appeared to more closely approximate edema, stasis pigmentation and persistent ulceration as manifestations of chronic venous insufficiency of the left lower extremity.


CONCLUSIONS OF LAW

1. The criteria for rating in excess of 40 percent for chronic venous insufficiency of the left lower extremity, prior to November 19, 2015, are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.1, 4.3, 4.7, 4.10, 4.104, Diagnostic Codes 7199-7121 (2016).

2. Resolving all reasonable doubt in the Veteran's favor, the criteria for a 60 percent but no higher rating for chronic venous insufficiency of the left lower extremity, from November 19, 2015, are met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.321, 3.400(o), 4.1, 4.3, 4.7, 4.10, 4.104, Diagnostic Codes 7199-7121 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Due Process Considerations

The Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126) includes enhanced duties to notify and assist claimants for VA benefits. VA regulations implementing the VCAA were codified as amended at 38 C.F.R. §§ 3.102, 3.156(a), 3.159, and 3.326(a).

After a complete or substantially complete application for benefits is received, notice requirements under the VCAA essentially require VA to notify a claimant of any evidence that is necessary to substantiate the claim(s), as well as the evidence that VA will attempt to obtain and which evidence he or she is responsible for providing. See, e.g., Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002) (addressing the duties imposed by 38 U.S.C.A. § 5103 (a) and 38 C.F.R. § 3.159 (b)).

In rating cases, a claimant must be provided with information pertaining to assignment of disability ratings (to include the rating criteria for all higher ratings for a disability), as well as information regarding the effective date that may be assigned. Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

VCAA-compliant notice must be provided to a claimant before the initial unfavorable decision on a claim for VA benefits by the AOJ. Id.; Pelegrini, 18 Vet. App. at 112; see also Disabled American Veterans v. Secretary of Veterans Affairs, 327 F.3d 1339 (Fed. Cir. 2003). However, the VCAA notice requirements may, nonetheless, be satisfied if any errors in the timing or content of such notice are not prejudicial to the claimant. Id. 

In an August 2010 pre-rating letter, the AOJ provided notice to the Veteran explaining what information and evidence was needed to substantiate an increased rating claim. It also notified the Veteran as to what information and evidence must be submitted by the appellant, and what information and evidence would be obtained by VA. This letter also provided the Veteran with general information pertaining to VA's assignment of disability ratings and effective dates, as well as the type of evidence that impacts those determinations, consistent with Dingess/Hartman.

The record also reflects that, consistent with applicable duty-to-assist provisions, VA has made reasonable efforts to develop the Veteran's claim, to include obtaining or assisting in obtaining all relevant records and other evidence pertinent to the matters herein decided. Pertinent medical evidence associated with the claims file consists of service records, VA treatment records, private medical records and the April 2017 VA examination report. There is no indication that the severity of the pertinent service-connected disability has materially increased since April 2017. The most recent VA treatment records indicate that the Veteran continues to see a private provider for lymphedema physical therapy treatment through the VA Choice Program. However, as part of the December 2016 remand, the AOJ sent the Veteran a December 2016 letter requesting that he identify such private medical records for lymphedema treatment or alternatively, submit them himself. 38 C.F.R. § 3.159(e)(2). He has not responded to this letter or made any report that he wanted these updated private medical records considered in the appeal. Also of record and considered in connection with the appeal are written statements from the Veteran and his representative. The Board finds that no further AOJ action on this claim, prior to appellate consideration, is required.

The Board finds substantial compliance with the July 2016 and December 2016 remand directives. See Stegall v. West, 11 Vet. App. 268 (1998) (holding that a remand confers on the claimant, as a matter of law, the right to compliance with the remand order); see also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (holding that substantial, rather than strict, compliance with remand directives is required). The AOJ sent the Veteran a December 2016 letter requesting that the Veteran identify all pertinent treatment records and included authorizations for the release of private medical records. It obtained Lake City and Gainesville VA Medical Center (VAMC) records. The April 2017 VA examination is in substantial compliance with the December 2016 remand instructions. See Acevedo v. Shinseki, 25 Vet. App. 286, 293-94 (2012) (holding that a VA examination report must be read as a whole); see also Monzingo v. Shinseki, 26 Vet. App. 97, 106 (2012). Also, as directed, after the receipt of additional evidence, the AOJ readjudicated the claim in the May 2017 SSOC. 

In summary, the duties imposed by the VCAA have been considered and satisfied. There is no additional notice that should be provided, nor is there any indication that there is additional existing evidence to obtain or development required to create any additional evidence to be considered in connection with the claim herein decided. As such, the Veteran is not prejudiced by the Board proceeding to a decision on this claim, at this juncture. See Mayfield v. Nicholson, 20 Vet. App. 537, 543 (2006) (rejecting the argument that the Board lacks authority to consider harmless error). See also ATD Corp. v. Lydall, Inc., 159 F.3d 534, 549 (Fed. Cir. 1998).


II. Analysis

Disability evaluations are determined by the application of VA's Schedule for Rating Disabilities, which is based on average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two ratings shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

The Veteran's entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where an increase in the level of a service-connected disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet. App. 55 (1994). However, in determining the present level of a disability for any increased rating claim, the Board must consider the applicability of staged ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007). In other words, where the evidence contains factual findings that demonstrate distinct time periods in which the service-connected disability exhibited diverse symptoms meeting the criteria for different ratings during the course of the appeal, the assignment of staged ratings may be warranted. 

The Veteran is service-connected for chronic venous insufficiency of the left lower extremity with a 40 percent rating assigned under DCs 7199-7121. Such hyphenated diagnostic codes are used when a rating under one code requires use of an additional diagnostic code-in this case, post-phlebitic syndrome -to identify the basis for the rating. See 38 C.F.R. § 4.27. As the rating schedule does not provide specific criteria for chronic venous insufficiency, this disability has been evaluated by analogy to post-phlebitic syndrome under DC 7121. See 38 C.F.R. §§ 4.20, 4.104.

DC 7121 provides that a 40 percent rating is warranted for persistent edema and stasis pigmentation or eczema, with or without intermittent ulceration. A 60 percent rating is warranted for persistent edema or subcutaneous indurations, stasis pigmentation or eczema, and persistent ulceration. A maximum 100 percent rating is warranted for massive board-like edema with constant pain at rest. 38 C.F.R. § 4.104, DC 7121.

In June 2010, the Veteran filed the current increased rating claim.

In August 2010, the Veteran was afforded a VA artery and vein examination. He reported that since approximately 2005 or so, his left lower extremity had become more symptomatic with increased swelling. He identified symptoms of pain, numbness and severe edema. The pain was 8/10 most of the time. He woke up at night due to leg pain and had increased pain/ cramping with walking. The edema was reportedly persistent without relief from elevation. The Veteran denied any history for pulmonary embolism, blood clot, acute thrombophlebitis, or deep vein thrombosis (DVT). The Veteran reported significantly diminished activity over the past five years. Clinical examination shows a barely palpable dorsalis pedis. The examiner described severe lymphedema and swelling starting from the dorsum all the way through the knee. The left lower calf circumference was slightly (two centimeters) larger than the right calf. The examiner attempted to obtain an ankle brachial index (ABI), but the Veteran's legs were too large to do so. He diagnosed severe swelling consistent with lymphedema and postphlebitic syndrome. He commented that the Veteran had become much more symptomatic with increased pain, numbness and loss of sensation. He stated that the bilateral lymphedema is very severe and would limit walking or any recreational activity. He recommended a higher disability rating. 

August 2011 private medical records reflect that the Veteran had a two-week history of slight increased swelling in the left leg. He was noted to have severe lymphedema in both legs. He was admitted to the hospital for antibiotic treatment for left lower extremity cellulitis. 

February 2012 VA podiatry clinic records show that the Veteran requested a toenail trimming. He had difficulty reaching his feet. The podiatrist noted severe lymphedema affecting both legs, ankles and feet with the left leg being worse than the right. 

August 2012 VA physical therapy records reflect that the Veteran received custom compression stockings for treatment.

November 2012 private medical records note severe lymphedema in both legs. The treatment plan included lymph pumps, elevation, stockings and diuretics. 

In his November 2012 substantive appeal, the Veteran reported that his lymphedema had worsened and a 40 percent rating was insufficient. 

December 2013 VA primary care records show that stasis edema without cyanosis was noted for both legs. The Veteran had a healing ulcer on his right ankle. 

June 2014 VA primary care records again show stasis edema without cyanosis. There was no report concerning an ulcer. 

April 2015 private medical records include complaints about increased bilateral edema and pain. Clinical examination noted bilateral lower extremity lymphedema. The Veteran was admitted for cardiac disease treatment. 

April 2015 private hospital records document limited lower extremity range of motion due significant swelling. The clinician reported 3+/5 strength in the lower extremities. The Veteran could not walk further than five feet, citing pain in the back of his legs. 

October 2015 VA primary care records include reports of increased lower extremity swelling. Clinical evaluation showed bilateral edema without cyanosis or clubbing. No skin openings were observed. The clinician noted the lymphedema of both legs as progressively worse. 

November 2, 2015 VA primary clinic records identify two small, almost healing skin openings of the legs. The clinician placed a lymphedema clinic/ wound care referral. 

The report of a November 19, 2015 VA wound care consultation reflects that the Veteran had oozing and small open areas of the left lower extremity. Some were healing, but wound care education was needed. Clinical evaluation showed intact pink, blanchable skin without open areas. Lymphedema (4+) to both legs and feet was observed. The clinician noted that the Veteran used a motorized scooter for ambulation with oxygen. No pulses were located. The clinician assessed bilateral lower extremity lymphedema and peripheral vascular disease (PVD). 

April 2016 VA primary care records reflect that the Veteran had recently been hospitalized for congestive heart failure (CHF) exacerbation. He was noted to be doing well since discharge. Clinical evaluation revealed edema (+4) for both legs. The clinician assessed progressive chronic lymphedema. 

June 2016 private medical records reflect that the Veteran had dark brown skin color and a few small open areas affecting his left lower extremity. Upon clinical examination, skin was described as moderately dry. The clinician noted old scars from ulcerations. The clinician assessed the severity as moderate. 

August 2016 private medical records document "a few small scratches" and old scarring from prior ulcerations. Skin was described as dark brown and mildly red with moderate dryness. 

In August 2016, the Veteran was afforded a VA artery and vein examination. The examiner diagnosed chronic venous insufficiency left lower extremity. The examiner opined that the severity of the vascular condition was not tantamount to amputation with prosthesis. The examiner reported that no associated scars were found. Currently, the Veteran had swollen legs and feet. Elevation of the extremity was minimally beneficial. The Veteran took Lasix and wore compression stockings for treatment. Clinical evaluation showed bilateral edema and use of compression stockings. The Veteran declined to remove the stocking. He denied open ulcers. Circumference of the leg was the same bilaterally. The examiner commented that lymphedema was less likely related to left lower extremity chronic venous insufficiency. 

In a September 2016 letter, a private treating clinician (B.M.) stated that the Veteran was receiving bandage therapy for moderate to severe lymphedema affecting both legs. 

February 2017 VA treatment records reference a chronic ulcer as a reason for a private medical referral.

March 2017 VA vascular surgery consultation records show that the Veteran had hyperpigmentation affecting both lower extremities. The Veteran did not report infections being a significant issue. He was in a wheelchair primarily due to poor respiratory status. Clinical evaluation showed hyperpigmentation from the mid-calf downwards and moderate to severe lymphedema. The Veteran's ankle brachial index (ABI) was sufficient and no vascular surgery was indicated. 

In April 2017, the Veteran was reexamined for left lower extremity chronic venous insufficiency. The examiner noted the left Achilles tendon injury and subsequent swelling from cast treatment. She was unclear as to the when the lymphedema diagnosis was made. She stated that the Veteran had varicose veins and post-phlebitis syndrome affecting the left lower extremity. Symptoms were relieved with elevation and compression hosiery. The examiner noted symptoms of persistent stasis pigmentation, persistent edema that is incompletely relieved by elevation of extremity. She stated that the Veteran used an electric wheelchair due to many illnesses. For the vascular condition, she stated that the affected extremity function was not so diminished that amputation with prosthesis would equally serve the Veteran. She remarked that the Veteran had varicose veins in his left lower extremity with edema (3+). It was difficult to distinguish between edema due to service-connected chronic venous insufficiency and that due to chronic CHF. She reiterated the established chronic venous insufficiency diagnosis of the left lower extremity. 

After careful review of the record, the Board finds that, with resolution of all reasonable doubt in the Veteran's favor, beginning November 2, 2015, chronic venous insufficiency of the left lower extremity disability is most appropriately rated as 60 percent, but that a higher rating prior to that date is not warranted. 

At the outset, the Board notes that the Veteran is service-connected left lower extremity venous insufficiency and most of the treatment records refer to left lower extremity lymphedema as the diagnosis. While the August 2016 VA examiner provided a conclusory opinion that these two diseases are unrelated, the totality of the evidence of record indicates the Veteran has a complicated medical history with left lower extremity edema dating to service. There is no persuasive medical indication that the lymphedema symptoms and diagnosis are clearly distinguishable from service-connected left lower extremity venous insufficiency. Thus, the Board has resolved all reasonable in the Veteran's favor in attributing all his left lower extremity symptoms/manifestations to his service connected venous insufficiency. See Mittleider v. West, 11 Vet. App. 181 (1998) . 

Prior to November 19, 2015, the evidence indicates that the chronic venous insufficiency diagnosis of the left lower extremity was productive of edema, but does not clearly document stasis pigmentation or persistent ulceration. (See August 2010 VA examination report; December 2013, June 2014 and October 2015 VA primary care records (stasis edema without cyanosis)). Notably, for DC 7121, the 60 percent criteria are listed in the conjunctive, not disjunctive; thus all criteria must be met. See Melson v. Derwinski, 1 Vet. App. 334, 337 (1991) (use of the conjunctive "and" in a statutory provision meant that all of the conditions listed in the provision must be met); Middleton v. Shinseki, 727 F.3d 1172, 1178 (Fed. Cir. 2013). The Veteran was clinically examined multiple times over this period and the treating clinicians did not report or document any left lower extremity skin breakdown or ulcer or clearly refer to skin discoloration as a notable feature. See VA primary care records from December 2013, June 2014 and October 2015. The Veteran does not provide any reports otherwise concerning stasis pigmentation or ulceration of the left lower extremity. Consequently, the absence of reports concerning stasis pigmentation or persistent ulceration precludes a rating in excess of 40 percent for left lower extremity venous insufficiency prior to November 19, 2015. Id.; 38 C.F.R. § 4.104, DC 7121; Melson, supra.; Middleton, supra. 

Accordingly, the Board resolves reasonable doubt in the Veteran's favor to find that, beginning November 19, 2015, it is factually ascertainable that the additional manifestations of stasis pigmentation and persistent ulceration have been approximated. See 38 C.F.R. §§ 3.400(o), 4.3, 4.7, 4.104, DC 7121. On November 2, 2015, a VA treating clinician observed skin openings and placed a referral to the wound clinic. On November 19, 2015, a VA wound care clinician described the Veteran's left lower extremity skin as pink, which is indicative of stasis pigmentation. Clinical records after November 19, 2015 include additional findings of skin breakdown or ulcer and stasis pigmentation. See April 2017 VA examination report (noting stasis pigmentation); and private medical records from June 2016 and August 2016 (referring to ulcerations with associated scarring)). Although the Veteran denied ulcers at the August 2016 VA examination, the February 2017 VA treatment records list chronic ulcer as a reason for the private treatment referral. The Board also notes that the April 2017 VA examination report confirmed edema and persistent stasis pigmentation, but not persistent ulceration. However, given the above history, the Board resolves reasonable doubt to find that, as of November 19, 2015, both persistent ulceration of the left lower extremity and persistent edema and stasis pigmentation of the left lower extremity have been shown. See id. 

Notably, however, the maximum, 100 rating for the disability under DC 7121 is not warranted at any point pertinent to the current claim for increase. The April 2017 VA examiner declined to assess the left lower extremity edema as massive, board-like edema. The medical and lay evidence does not otherwise suggest that massive, board-like edema has been.

The above determinations are based on consideration of pertinent provisions of VA's rating schedule. Additionally, the Board finds that at no point pertinent to this claim has the Veteran's chronic venous insufficiency of the left lower extremity been shown to present so exceptional or so unusual a picture as to render the applicable criteria inadequate, and to warrant the assignment of any higher rating on an extra-schedular basis. See 38 C.F.R. § 3.321 (b)(1).

The threshold factor for extra-schedular consideration is a finding on the part of the AOJ or the Board that the evidence presents such an exceptional disability picture that the available schedular ratings for the service-connected disability at issue are inadequate. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). Therefore, initially, there must be a comparison between the level of severity and the symptomatology of the claimant's disability with the established criteria provided in the rating schedule for this disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the disability picture is contemplated by the rating schedule, the assigned rating is therefore adequate, and no referral for extra-schedular consideration is required. See VAOGCPREC 6-96 (Aug. 16, 1996); Thun v. Peake, 22 Vet. App. 111 (2008).

If the rating schedule does not contemplate the claimant's level of disability and symptomatology, and is found inadequate, the AOJ or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms" (including marked interference with employment and frequent periods of hospitalization). 38 C.F.R. § 3.321 (b)(1). If so, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step: a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extra-schedular rating. Thun, 22 Vet. App. 111.

In this case, the Board finds that the applicable schedular criteria are adequate to rate the Veteran's chronic venous insufficiency of the left lower extremity at all points pertinent to this appeal. The rating schedule fully contemplates the described symptomatology, and provides for ratings higher than that assigned based on more significant functional impairment. Significantly, there is no medical indication or argument that the applicable criteria are otherwise inadequate to rate chronic venous insufficiency of the left lower extremity. The Board also points out that the Veteran is currently in receipt of a total disability rating with special monthly compensation, which in itself is indicative that his service-connected disabilities are fully contemplated by the schedular rating criteria. 

The Board further notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extra-schedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where evaluation of the individual conditions fails to capture all the symptoms associated with service-connected disabilities experienced. Here, however, the Veteran has not asserted, and the evidence of record does not suggest, that this appeal involves any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. Yancy v. McDonald, 27 Vet. App. 484, 495 (Fed. Cir. 2016) ("the Board is required to address whether referral for extra-schedular consideration is warranted for a veteran's disabilities on a collective basis only when that issue is argued by the claimant or reasonably raised by the record through evidence of the collective impact of the claimant's service-connected disabilities"). As such, further discussion of the holding in Johnson is unnecessary.

As the threshold requirement for invoking the procedures set forth in 38 C.F.R. § 3.321 (b)(1) is not met, referral of the claim for extra-schedular consideration is not required. See Bagwell v. Brown, 9 Vet. App. 337, 338-39 (1996); Floyd v. Brown, 9 Vet. App. 88, 96 (1996); Shipwash v. Brown, 8 Vet. App. 218, 227 (1995).

For all the foregoing reasons, the Board finds that staged rating of the Veteran's chronic venous insufficiency of the left lower extremity is appropriate, with a 60 percent rating warranted rom November 19, 2015. The Board has resolved all reasonable doubt in the Veteran's favor in assigning the 60 percent rating from that date, but finds that the preponderance of the evidence is against assignment of any higher rating at any pertinent point. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).




ORDER

A 40 percent rating for chronic venous insufficiency of the left lower extremity, prior to November 19, 2015, is denied.

A 60 percent rating for chronic venous insufficiency of the left lower extremity, from November 19, 2015, is granted; subject to the legal authority governing the payment of compensation.


REMAND

Unfortunately, the Board finds that further AOJ action on the remaining claim on appeal is warranted, even though such will, regrettably, further delay an appellate decision on this matter.

A remand by the Board confers upon the Veteran, as a matter of law, the right to compliance with the remand instructions, and imposes upon VA a concomitant duty to ensure compliance with the terms of the remand. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

In December 2016, the Board remanded this matter, inter alia, for the AOJ to obtain a VA medical etiology opinion for service connection for right lower extremity lymphedema. The remand instructions specifically stated that the examiner should not focus on the absence of service records establishing lymphedema in service. Rather, the examiner should explain why or why not the right lower extremity lymphedema is related to the in-service left Achilles tendon injury. It further requested that the examiner provide an etiology for the right lower extremity lymphedema, if possible and that the examiner support his or her rationale with citations to pertinent evidence or medical principles. 

The AOJ obtained an April 2017 VA/QTC medical opinion. The examiner provided a negative medical opinion. For her direct service connection rationale, she cited an absence of right leg swelling in service. She did not discuss the in-service left Achilles tendon injury. She did not indicate whether it was possible to identify the etiology for right lower extremity lymphedema. 

The Board finds the April 2017 VA/QTC medical opinion regarding direct service connection to be unresponsive to the specific remand instructions given in the December 2016 Board remand. The examiner's rationale regarding direct service connection is conclusory and essentially based upon an absence of medical treatment in service. The examiner makes no reference to the left Achilles tendon injury in her rationale, nor explains whether an etiology can be identified. 

The April 2017 VA/QTC medical opinion rationale for secondary service connection is a conclusive statement that there was no causal relationship between left lower extremity venous insufficiency and right lower extremity lymphedema. The Board finds an additional opinion regarding secondary service connection with further explanation of the different pathologies between the disabilities is needed to fulfill the December 2016 Board remand instructions. 

For these reasons, the April 2017 VA/QTC medical opinion regarding service connection for right lower extremity lymphedema did not substantially comply with the Board's past remand directives. Thus, another remand of this matter is required to ensure such compliance. Stegall, supra.; See also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall where the Board's remand instructions were substantially complied with).

While this matter is on remand, to ensure that all due process requirements are met, and the record is complete, the AOJ should undertake appropriate action to obtain and associate with the claims file all outstanding, pertinent records. As for VA records, the claims file reflects that the most recent VA treatment records associated with the Veteran's claims file are from the VA Medical Center (VAMC) in Gainesville, Florida from April 25, 2017. On remand, the AOJ should obtain updated records of any relevant VA treatment of the Veteran. See 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c) (2016); see also Bell v. Derwinski, 2 Vet. App. 611 (1992) (holding that VA is charged with constructive notice of medical evidence in its possession).

Prior to obtaining another VA medical opinion, to ensure that all due process requirements are met, and the record is complete, the AOJ should also give the Veteran another opportunity to provide additional information and/or evidence pertinent to the remaining claim on appeal, explaining that he has a full one-year period for response. See 38 U.S.C.A. § 5103(b)(1) (West 2014); but see also 38 U.S.C.A. § 5103 (b)(3) (clarifying that VA may make a decision on a claim before the expiration of the one-year notice period). The AOJ should specifically request that the Veteran provide, or provide appropriate authorization to obtain, any outstanding, pertinent private (non-VA) medical records.

Thereafter, the AOJ should attempt to obtain any additional evidence for which the Veteran provides sufficient information, and, if needed, authorization, following the current procedures prescribed in 38 C.F.R. § 3.159 (2016).

The actions identified herein are consistent with the duties imposed by the VCAA. 38 U.S.C.A. §§ 5103, 5103A; 38 C.F.R. § 3.159. However, identification of specific actions requested on remand does not relieve the AOJ of the responsibility to ensure full compliance with the VCAA and its implementing regulations. Hence, in addition to the actions requested above, the AOJ should also undertake any other development and/or notification action deemed warranted by the VCAA prior to adjudicating the remaining claim on appeal. 

Accordingly, this matter is hereby REMANDED for the following action:

1. Obtain from the Gainesville VAMC all outstanding, pertinent records of VA evaluation and/or treatment of the Veteran, dated since April 25, 2017. Follow the procedures set forth in 38 C.F.R. § 3.159(c) with regards to requesting records from Federal facilities. All records and/or responses received should be associated with the claims file.

2. Send to the Veteran a letter requesting that he Veteran provide sufficient information and, if necessary, authorization, to obtain any additional evidence pertinent to the remaining claim on appeal that is not currently of record. Specifically request that the Veteran identify the medical provider, and either furnish, or furnish appropriate authorization to obtain, medical records for lymphedema treatment through the VA Veteran's Choice program and any other outstanding, pertinent private (non-VA) records.

Clearly explain to the Veteran that he has a full one-year period to respond (although VA may decide the claim within the one-year period).

3. If the Veteran responds, assist him in obtaining any additional evidence identified, following the current procedures set forth in 38 C.F.R. § 3.159. All records/responses received should be associated with the claims file. If any records sought are not obtained, notify the Veteran of the records that were not obtained, explain the efforts taken to obtain them, and describe further action to be taken.

4. After all records and/or responses received from each contacted entity have been associated with the claims file, arrange to obtain an addendum opinion from an appropriate physician-preferably, one who had not previously examined him or provided an addendum opinion in connection with his appeal.

Only arrange for the Veteran to undergo further VA examination if one is deemed necessary in the judgment of the physician designated to provide the addendum opinion.

The contents of the entire, electronic claims file (in VBMS and Virtual VA), to include a complete copy of this REMAND, must be made available to the designated individual, and the addendum opinion/examination report should include discussion of the Veteran's documented history and lay assertions.

Based on a review of all pertinent lay and medical evidence, the examiner should render an opinion, consistent with sound medical judgment, as to whether it is at least as likely as not (i.e., a 50 percent or greater probability) that right lower extremity lymphedema:

 a) had its onset in, or is otherwise medically-related to the Veteran's military service to specifically include the left Achilles tendon injury therein; or, if not,

 b) was caused, OR is or has been aggravated (worsened beyond natural progression), by the Veteran's service-connected chronic venous insufficiency of the left lower extremity. If aggravation is found, the examiner should attempt to quantify the degree of additional disability resulting from the aggravation, to include by identifying (to the extent possible) the baseline level of disability prior to aggravation .

In addressing the matter of direct service connection, the examiner should not focus on the absence of records establishing lymphedema of the right lower extremity in service. Rather, the examiner should review all of the records and explain, in detail, why the Veteran's lymphedema of the right lower extremity in service may or may not be related to the Achilles tendon injury in service. The examiner should also to provide an etiology for the Veteran's lymphedema of the right lower extremity in service if an etiology can be discerned from the record. The examiner should also provide detailed reasons for the evidence does not support a finding the Veteran's lymphedema of the right lower extremity in service is in any way related to, to include worsened by, the Veteran's chronic venous insufficiency of the left side, if that is the conclusion reached. 

The examiner is reminded that that merely stating a conclusory opinion that the Veteran's lymphedema of the right lower extremity is not related to service and was not caused or aggravated by the Veteran's service-connected venous insufficiency is not sufficient. An explanation is required that takes into account the record and pertinent medical principles and the examiner's rationale should include citation to pertinent evidence and/or medical principles relied upon to form that opinion. If an opinion cannot be made without resort to speculation, the examiner must provide an explanation as to why this is so and note what, if any, additional evidence would permit such an opinion to be made

All examination findings/testing results, along with a complete, clearly-stated rationale for the conclusions reached, must be provided.

5. To help avoid future remand, ensure that all requested actions have been accomplished (to the extent possible) in compliance with this REMAND. If any action is not undertaken, or is taken in a deficient manner, appropriate corrective action should be undertaken. See Stegall, supra.). Specifically, review the opinions obtained on remand to ensure that they include the information requested above and are supported by detailed and adequate rationale.

6. After completing the requested actions, and any additional notification and/or development deemed warranted, adjudicate the remaining claim on appeal in 
light of all pertinent evidence (to include all that added to the VBMS and/or Virtual VA file(s) since the last adjudication) and legal authority.

7. If the benefit sought on appeal remains denied, furnish to the Veteran and his representative an SSOC that includes clear reasons and bases for all determinations, and afford them an appropriate time period for response.

The purpose of this REMAND is to afford due process and to accomplish additional development and adjudication; it is not the Board's intent to imply whether the benefit requested should be granted or denied. The Veteran need take no action until otherwise notified, but he may furnish additional evidence and/or argument during the appropriate time frame. See Kutscherousky v. West, 12 Vet. App. 369 (1999).

This REMAND must be afforded expeditious treatment. The law requires that all claims remanded by the Board or by the United States Court of Appeals for Veterans Claims (Court) for additional development or other appropriate action 
 must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B , 7112 




 (CONTINUED ON NEXT PAGE)

(West 2014). The AOJ is reminded that this appeal has been advanced on the Board's docket.




____________________________________________
JACQUELINE E. MONROE
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs